IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN/WATERLOO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. CR 12-2018 |
| Plaintiff, ) | |
| ) | DEFENDANT'S SUPPLEMENT |
| vs. ) | TO MOTION FOR PRETRIAL |
| ) | RULING REGARDING |
| MICHAEL WINTERS, ) | ADMISSIBILITY OF EVIDENCE |
| ) | AND REQUEST FOR AN |
| Defendant. ) | EVIDENTIARY HEARING |

On August 29, 2012, Defendant Michael Winters, through counsel, filed a Motion for Pretrial Ruling Regarding Admissibility of Evidence (docket no. 15). On October 25, 2012, this Court issued an Order (docket no. 49) directing Defendant to clarify what relief he is seeking by means of his Motion. Defendant now submits this Supplement to comply with the Court's October 25, 2012, Order.

Ultimately, the relief Defendant is seeking is a jury instruction on the defense of self defense and/or justification. As previously stated in the brief accompanying his Motion, Defendant acknowledges the Eighth Circuit Court of Appeals has never expressly recognized justification or self defense as a defense to a violation of 18 U.S.C. § 922(g). *United States v. Blankenship*, 67 F.3d 673, 677 (8th Cir. 1995); *United States v. Hudson*, 414 F.3d 931, 933 (8th Cir. 2005); *United States v. Luker*, 395 F.3d 830, 832 (8th Cir. 2005); *United States v. Poe*, 442 F.3d 1101, 1103 (8th Cir. 2006). On the other hand, the Eighth Circuit has also not expressly precluded the possibility of such a defense in a firearm possession case. Thus, Defendant is asking the Court to make a ruling on the availability of a self defense jury instruction in his case.

1

In order for the Court to make such a determination, however, Defendant respectfully asserts that case law indicates there is a threshold which must be met by Defendant to establish a justification defense, which requires proof of the following elements:

1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do that criminal acts and also to avoid the threatened harm; and

4) that a direct causal relationship may be reasonably anticipated between the criminal action and the avoidance of the threatened harm.

*Blankenship*, 67 F.3d at 677-78; *Luker*, 395 F.3d at 832-33; *Poe*, 442 F.3d at1103-04.  As such, Defendant wants to introduce evidence at trial which will establish the existence of the above four elements, and which evidence supports his theory of defense.  Defendant is consequently also seeking a ruling from the Court on the admissibility of the evidence which he contends supports his theory of defense.

The following is a summary of the evidence which Defendant seeks to admit to support his defense and a concomitant jury instruction on self defense:

A. Testimony from Chimere Tillman, Myeisha Tillman and Meeiesha Tillman that they all resided at 207 Lafayette St. in Waterloo, Iowa on and before April 28, 2012.  They will testify that in the two to three weeks preceding Defendant's possession of the firearm on April 28, 2012, they or members of their family had received threats of harm from an individual named Marlon Harris.  Marlon Harris is the ex-boyfriend of Chimere Tillman and he knew she lived at

207 Lafayette. They will further testify they believed Marlon Harris had a gun prior to April 28, 2012, due to statements made to them or others by Harris. Additionally, they will testify that one to two weeks before April 28, 2012, Harris vandalized Chimere Tillman's car, he got into a physical altercation with Meeiesha Tillman, and he frequently drove through the parking lot of a bar called Edo's when Chimere Tillman was there. Further, that on April 28, 2012, Harris showed up at Edo's, and he followed Chimere Tillman's vehicle when she left the bar. They will also testify that Defendant had been at Edo's with Chimere Tillman on April 28, 2012, he knew Harris was following Tillman that night, and Defendant went to 207 Lafayette with some members of the Tillman family when leaving Edo's. Additionally, that Harris rode past the Tillman residence more than once on April 28, 2012, and at one point he got out of the vehicle he was in and yelled threats at the residents. While he was yelling the threats, Harris was also making gestures with his arms and hands, and it looked like he had a gun in his hand. Further, that Defendant fired a gun while Harris was outside the residence. They will also testify that Harris' actions both on and before April 28, 2012, made them scared for their safety.

  B. Testimony from Hamdo Beslija, a bouncer at the bar Edo's. Mr. Beslija will testify that he was working on April 28, 2012. He will further testify that Marlon Harris kept driving through the parking lot of Edo's on April 28, and at one point Harris had words with Defendant. He will also testify that approximately one to two weeks before April 28, 2012, there was a fight at Edo's involving some of the Tillman family, Defendant, Harris and some of Harris' friends.

3

C. Evidence that when questioned by police, Marlon Harris denied being in the car which was outside of the Tillman residence at the time Defendant discharged the firearm. Additionally, evidence that Harris sent a text message to a friend shortly after the shooting stating his car had just been shot at.

D. Evidence that two females were in the car with Mr. Harris at the time of the shooting, those females being Chrishunda Sisk and Danila Toles. Further, that both females denied that Harris or anyone else was in the car with them at the time of the shooting, but a male voice can be heard on Ms. Sisk's 911 call.

E. Evidence that on April 28, 2012, prior to the shooting, Marlon Harris was text messaging with his girlfriend, an employee at Edo's. He was sending the girlfriend text messages inquiring if Chimere Tillman was at Edo's, and that he was going to start shooting when she came out.

F. Counsel also intends to proffer the possible trial testimony of Defendant via a recorded interview of Defendant conducted by Investigator Andrea Frana of the Waterloo Police Department. A copy of this interview has previously been submitted to the Court as part of the government's resistance to Defendant's motion (docket no. 21, exhibit 1). The relevant portions of Defendant's interview have been summed up in the Statement of Facts in both the brief accompanying Defendant's Motion and the brief accompanying the government's resistance to Defendant's motion (docket no. 21).

In conclusion, Defendant is ultimately requesting a jury instruction on self defense/justification in this matter. However, Defendant is also seeking a ruling from the Court

4

on the admissibility of the evidence which he contends supports his theory of defense and which would justify the giving of a self defense instruction.

        Respectfully submitted,

        FEDERAL DEFENDER'S OFFICE
        320 Third Street SE
        Suite 200
        Cedar Rapids, IA  52401-1542
        TELEPHONE: (319)  363-9540
        TELEFAX: (319) 363-9542


        BY: /s/ Jill M. Johnston
        JILL M. JOHNSTON
        jill_johnston@fd.org
        ATTORNEY FOR DEFENDANT,
        MICHAEL WINTERS


cc:    U.S. Attorney's Office
       U.S. Probation Office


**Certificate of Service**

I served a copy of this document on the attorneys of record of all parties as follows:

1. Method of service:    ( X ) electronic filing

2. Date served:    October 30, 2012

I declare that the statements above are true to the best of my information, knowledge, and belief.

By:  /s/: C. Maas

5